UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>                             Plaintiff,<br>v.<br>CITY OF SAN DIEGO, et al.,<br><br>                            Defendants. | Case No.: 14-cv-01941-L-RBB<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; AND (2) GRANTING LEAVE TO AMEND** |

Pending before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. Plaintiff filed an opposition and Defendants replied. The Court decides this matter on the briefs without oral argument. *See* Civ. L. R. 7.1(d.1). For the reasons stated below, Defendants' motion is granted in part and denied in part.[1] Plaintiff is granted leave to amend.

---

[1] *Tanya A. et al. v. San Diego et al.*, case no. 14cv1942-L(RBB), is a related case pending before this Court. The rulings on Defendants' motion to dismiss the first amended complaint in *Tanya A.* differ in some respects from the rulings in this Order. (*Cf. Tanya A.*, doc. no. 23.) There are differences between the two cases in factual allegations, legal claims, and arguments in opposition to Defendants' respective motions to dismiss. In this regard, in some instances the orders reach different conclusions.

## I. BACKGROUND

In San Diego, adult entertainment establishments are regulated by the Police Department. (First Amended Complaint ("FAC") Ex. 1 (San Diego Municipal Code ("SDMC") §33.3601).) A police permit is required to operate an adult entertainment establishment or perform as an adult entertainer. SDMC §§33.3603 & 33.3604. Section 33.0103 confers authority on police officers to inspect police-regulated businesses, including adult entertainment establishments:

> (a) The Chief of Police shall make, or cause to be made, regular inspections of all police-regulated businesses. Any peace officer shall have free access to any police-regulated business during normal operating hours. It is unlawful for any permittee or employee to prevent or hinder any peace officer from conducting an inspection.
>
> (b) Any police code compliance officer assigned by the Chief of Police to conduct inspections shall have free access to any police-regulated business during normal operating hours. It is unlawful for any permittee or employee to prevent or hinder any police code compliance officer from conducting an inspection.
>
> (c) The right of reasonable inspection to enforce the provisions of this Article is a condition of the issuance of a police permit. The applicant or permittee shall acknowledge this right of inspection at the time of application. Refusal to acknowledge this right of inspection is grounds for denial of the application. The right of inspection includes the right to require identification from responsible persons or employees on the premises. The refusal to allow inspection upon reasonable demand or the refusal to show identification by responsible persons or employees is grounds for the suspension, revocation, or other regulatory action against the police permit.

(Emphases (denoting terms defined elsewhere in the Ordinance) omitted.)

Ostensibly based on §33.0103, on July 15, 2013, armed police officers wearing bullet proof vests raided Cheetahs, an adult entertainment establishment in San Diego, where Plaintiff was working as an entertainer. (FAC ¶¶ 13-15 & 56.) Plaintiff was performing on stage at Cheetahs when the police officers entered the premises. (*Id.* ¶15.) The officers ordered the entertainers into the locker room behind the dressing rooms. (*Id.*

¶ 24.) They interrogated Plaintiff, along with all the other entertainers, and demanded her entertainer permit, driver's license, and social security number. They wanted to know if she had any tattoos or body piercings. (*Id*. ¶19.) The officers photographed each entertainer in a nearly nude state claiming they had to document their tattoos. (*Id*. ¶¶ 26 & 27.) They threatened to arrest the entertainers who objected to detention or photographs. Armed officers were posted at the doors to prevent the entertainers from leaving. (*Id*. ¶¶17, 23 & 57.) Plaintiff was detained for approximately two hours. (*Id*. ¶ 29.) On March 6, 2014, police officers again raided Cheetahs, as well as Expose, another adult entertainment establishment in San Diego. (*Id*. ¶¶13, 14.)

Based on these facts, Plaintiff filed an action in state court alleging violation of her rights under federal and California law. Defendants removed it to this Court based on federal question jurisdiction under 28 U.S.C. §§1331 and 1441. The Court has supplemental jurisdiction over state law claims under 28 U.S.C. §1367.

Defendants moved to dismiss Plaintiff's initial complaint. The motion was granted in part and denied in part, and Plaintiff was granted leave to amend. At issue in the pending motion is the sufficiency of Plaintiff's First Amended Complaint, wherein she asserts claims for: (1) deprivation of rights under 42 U.S.C. §1983 ("§1983"), alleging the licensing scheme established by San Diego Municipal Ordinance O-18885 ("Ordinance"), including SDMC §33.0103, is unconstitutional under the First, Fourth, and Fourteenth Amendments of the United States Constitution, both on its face and as applied; (2) deprivation of rights under §1983 alleging municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), based on an unlawful policy, practice, or custom; unlawful ratification; and failure to properly train; (3) violation of California Civil Code §52.1 ("Bane Act") alleging intentional interference with enjoyment of rights under the United States and California constitutions; and (4) false imprisonment under California law. Plaintiff seeks damages, declaratory and injunctive relief. Defendants move to dismiss the entire complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## II. DISCUSSION

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *See N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). The Court must assume the truth of all factual allegations in the complaint and "construe them in the light most favorable to [the nonmoving party]." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002); *see also Walleri v. Fed. Home Loan Bank of Seattle*, 83 F.3d 1575, 1580 (9th Cir. 1996). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). Instead, the allegations "must be enough to raise a right to relief above the speculative level." *Id.* Defendants argue variously that Plaintiff did not allege sufficient facts to state grounds for relief based on the alleged police raid on Cheetahs in July 2013, and that her claims lack a cognizable legal theory.

### A. First Amendment

In her first, ninth, tenth and eleventh causes of action,[2] Plaintiff claims, among other things, that the Ordinance violates the First Amendment on its face and as applied. Defendants initially argue these claims were dismissed with prejudice from the original complaint, and should be dismissed from the amended complaint because Plaintiff did not have leave to amend. To the contrary, the order expressly granted Plaintiff leave to

---

[2] The tenth and eleventh causes of action differ from the first in that the first cause of action seeks damages, while the tenth and eleventh seek declaratory relief. In her ninth cause of action, Plaintiff seeks injunctive relief to prevent repeated violations.

amend.  (Order Granting in Part and Denying in Part Defs' Mot. to Dismiss and Granting Pl.'s Mot. for Relief, filed Mar. 16, 2015 (doc. no. 18) at 16:7; *but see id.* at 16:21-22 (dismissed with prejudice).)

Next, Defendants contend the facial challenge claims should be dismissed because §33.0103 is a content-neutral, legitimate time, place, or manner restriction.  Section 33.0103 applies to all businesses listed in Chapter 3 Article 3 of the San Diego Municipal Code.  SDMC § 33.0101.  In addition to adult entertainment establishments, the list includes auto dismantlers, promoters, ticket brokers, swap meets, holistic health practitioners, etc.  *Id.* §§33.0701-33.4401.  Section 33.0103 was therefore not enacted to suppress the content or viewpoint of the speech associated with adult entertainment.  Furthermore, adult entertainment was included in the Ordinance to further significant governmental interests:

> It is the purpose and intent of this Division to provide for the orderly regulation of the business of nude entertainment in The City of San Diego by establishing certain minimum standards for the conduct of this type of business to protect the public order and the general welfare of the residents of The City of San Diego, including the prevention of prostitution, obscenity, lewd acts, money laundering and the infiltration of organized crime and its associated problems, the prevention of the spread of disease, the prevention of the deterioration of neighborhoods, the reduction of crime in and around adult entertainment businesses, and the preservation of the quality of urban life in The City of San Diego. It is not the intent of this Division to deny adults access to adult oriented materials protected by the First Amendment, or to deny access by the distributors and exhibitors of adult oriented entertainment to their intended market.

SDMC §33.3601 (emphases omitted).

Plaintiff does not dispute that the Ordinance is viewpoint-neutral and seeks to protect substantial governmental interests unrelated to the suppression of free speech.  Rather, she contends it confers unbridled discretion on the police in inspecting adult entertainment establishments, that this has a chilling effect, and constitutes a prior restraint on speech.

When a licensing statute in the area of free expression "vests unbridled discretion in a government official over whether to permit or deny expressive activity," it creates a prior restraint on speech, and is subject to a facial attack. *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 755-56, 757 (1988). In *Lakewood*, an ordinance regulating news racks on public property required an annual permit from the mayor. *Lakewood*, 486 U.S. at 753, 754. The ordinance contained no explicit limits on the exercise of discretion. *Id.* at 769. The mayor could deny the permit by stating reasons, but no requirement for specificity was included. *Id.* at 754 & 769; *see also id.* at 754 n.2 (ordinance text). Alternatively, the mayor could grant the permit on any "terms and conditions [he or she] deemed necessary and reasonable." *Id.* at 754. The ordinance was subject to a facial attack because it was "apparent that the face of the ordinance itself contain[ed] no explicit limits on the mayor's discretion." *Id.* at 769. The "doctrine forbidding unbridled discretion ... requires that the limits ... implicit in [the] law," *i.e.*, that it will be applied in good faith for reasons related to the governmental interests sought to be protected, "be made explicit by textural incorporation, binding judicial or administrative construction, or well-established practice." *Id.* at 770. The portions of the ordinance giving the mayor unfettered discretion were therefore held unconstitutional on their face. *Id.* at 772.

Accordingly, "even if the government may constitutionally impose content-neutral prohibitions on a particular manner of speech, it may not *condition* that speech on obtaining a license or permit from a government official in that official's boundless discretion." *Lakewood*, 486 U.S. at 764 (emphasis in original). Here, the Ordinance is so conditioned. It provides for "regular" "reasonable" inspections "during normal operating hours," but includes no other criteria for how, when or how often the police may conduct them and does not delineate the scope of inspection. SDMC §33.0103. The inspections are "a condition of the issuance of a police permit" and "[t]he refusal to allow inspection upon reasonable demand ... is

grounds for the suspension, revocation, or other regulatory action against the police permit." *Id.* §33.0103(c). The permit must be renewed annually. *Id.* §33.0308. If it has been revoked, it cannot be renewed. *Id.* §33.0308.

Accordingly, the Ordinance does not provide any explicit meaningful criteria for the scope of the inspections, which are a requirement to obtain or renew the permit, and is therefore subject to a facial attack. Defendants' reliance on *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289-93 (2000), is unavailing, because it does not address the issue raised by Plaintiff, *i.e.*, prior restraint of speech created by a licensing scheme giving the government unfettered discretion. Plaintiff has sufficiently alleged that the Ordinance violates the First Amendment on its face. Defendants' motion is denied in this regard.

Plaintiff also challenges the Ordinance on an as-applied basis, arguing the inspection, as actually performed, exceeded the authorized scope, and chilled Plaintiff's exercise of her First Amendment rights. Defendants argue the claim should be dismissed because Plaintiff consented to inspections, and that in any event, the inspections did not interfere with her exercise of First Amendment rights. The Court is not persuaded.

Plaintiff alleges she was on stage performing when the officers entered the club. (FAC ¶15.) Like the other entertainers at Cheetahs, she was ordered to the dressing room, and was not allowed to leave under threat of arrest. Her detention lasted approximately two hours. (*Id.* ¶¶15-29.) Although the amended complaint does not explicitly state that Plaintiff's performance was interrupted, this is reasonably implied. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (court may draw reasonable inferences from factual allegations); *see also Gompper*, 298 F.3d at 895 (factual allegations construed in plaintiff's favor). Plaintiff sufficiently alleged that the interruption of her performance interfered with her exercise of free speech. Show of government force, including, as here, threat of arrest, chills the exercise of First Amendment rights. *See, e.g., The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 522 (9th Cir. 1989).

7

Citing *Snepp v. United States*, 444 U.S. 507 (1980), Defendants counter that even if Plaintiff's First Amendment rights may have been violated, she had waived them in her permit application. Although Plaintiff does not dispute that acknowledging the City's right of inspection was a condition to obtaining her permit, Defendants' reliance on *Snepp* is unavailing.

In *Snepp*, a CIA agent's employment and termination agreements prohibited publishing a book about CIA experience without prior approval. Despite a First Amendment challenge, the Court upheld this contractual and statutory waiver, which was designed to protect national security and confidentiality of classified intelligence. The circumstances here are different. In applying for her permit, Plaintiff acknowledged the police department's right of inspection, *i.e.*, right to "regular" "reasonable" inspections "during normal operating hours," including the right to require identification. S.D.M.C. §33.0103.[3] However, nothing in the Ordinance suggests that as a part of a "regular" and "reasonable" inspection, the police could interrupt her performance, detain her for two hours without consent and under threat of arrest, or photograph[4] her in a nearly nude state. Plaintiff has sufficiently alleged that the Ordinance, as applied, violated her First Amendment rights. Defendants' motion is therefore denied in this regard.

### B.   FOURTH AMENDMENT

In her first, second, third, ninth, tenth and eleventh causes of action, Plaintiff claims the Ordinance violates the Fourth Amendment on its face and as applied because,

---

[3]   The section refers to "responsible persons" and "employees." SDMC §33.0103(c). Plaintiff disputes she was Cheetahs' employee. The Court need not reach this issue, because the Ordinance defines "responsible person" as including a "permittee." *Id*. §33.0201. A "permittee" is "a person who holds a permit" issued under the Ordinance. *Id.* Based on her allegations, Plaintiff had a permit, and was therefore a permittee. (*See, e.g.,* FAC ¶56.)

[4]   The Ordinance requires photographs as a part of the permit application process, but not as a part of inspections. *Cf.* S.D.M.C. §33.0304 (Div. 3 "Application for Permits," "Applicant and Employee to Furnish Fingerprints and Photographs,"); *with id.* §33.0103 (Div. 1 "General Provisions," "Inspection and Authority of Peace Officers or Police Employees").

among other things, it allows for unreasonable warrantless searches and seizures. Defendants move to dismiss, claiming that the tenth and eleventh causes of action are insufficiently alleged, that the raid was an administrative inspection which does not require a warrant, and that by obtaining an adult entertainment license, Plaintiff consented to the searches and seizures.

Initially Defendants argue for dismissal of the tenth and eleventh causes of action for failure to comply with the pleading standard set forth in Rule 8(a)(2). They maintain these allegations are so vague and general as to leave them guessing about the basis for Plaintiff's claims. (*See* Mot. at 17.) Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). The rule does not require detailed factual allegations. *Id*. Upon review of the tenth and eleventh causes of action, it is apparent that they are focused on §33.0103 of the Ordinance and sufficiently state the basis for Plaintiff's constitutional claims.[5] (*See, e.g.,* FAC at 5-6 ("Rules at Issue," quoting §33.0103).) This is further supported by the factual allegations which are incorporated by reference into the tenth and eleventh causes of action. Accordingly, these claims are sufficiently alleged to meet the requirements of Rule 8(a)(2).

Next, Defendants maintain the search was a lawful administrative inspection in a pervasively regulated industry, used to ensure compliance with regulations. The parties vehemently disagree whether adult entertainment is a pervasively regulated industry. The Court need not resolve this issue. Assuming solely for the sake of the argument that adult entertainment is pervasively regulated, the search, as alleged, did not comply with the requirements for warrantless administrative inspections.

---

[5] This is also apparent from Defendants' ability to focus their motion on the relevant issues.

Among other things, warrantless searches and seizures on commercial property in pervasively regulated industries are constitutionally permissible if the underlying statute's inspection program, "in terms of the certainty and regularity of its application, [provides] a constitutionally adequate substitute for a warrant." *New York v. Burger*, 482 U.S. 691, 702-03 (1987) (internal quotation marks and citation omitted). To comply with this requirement, the statute must have "a properly defined scope, and it must limit the discretion of the inspecting officers." *Id.* at 703 (cit. omitted). To properly limit the discretion of the inspectors, the statute "must be carefully limited in time, place, and scope." *Id.* (internal quotation marks and cit. omitted). The Ordinance includes no criteria for the scope of the inspections. *See* SDMC §33.0103. Plaintiff therefore sufficiently alleged that it does not meet the standard for warrantless administrative searches.

Finally, Defendants contend the Fourth Amendment as-applied claim should be dismissed because Plaintiff acknowledged the right to inspect when she applied for her permit. As discussed in the context of Plaintiff's First Amendment claims, nothing in the Ordinance suggests the intrusiveness and duration of the inspection as alleged in the complaint. Submitting photographs with a license application and providing identification during reasonable inspections, *to procure or avoid losing a permit*, is qualitatively different from stripping down to undergarments, huddling in a dressing room for a prolonged detention, and submitting to a photo shoot that involves the exposure of intimate body parts, *to avoid arrest*. Plaintiff consented to the former, not the latter. Accordingly, Plaintiff sufficiently alleged that the search and seizure exceeded the scope of her acknowledgment and consent.

For the first time in their reply, Defendants argue Plaintiff lacks standing to bring a claim for unconstitutional search and seizure because she does not own the premises which were searched. Ordinarily, the Court does not entertain substantive arguments made for the first time in the reply, as it deprives the opposing party of the opportunity to respond. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). However, because

the argument targets the subject matter jurisdiction of this Court under Article III of the Constitution, the Court must consider it, and can do so *sua sponte*. *See, e.g., Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). The factual basis for Defendants' jurisdictional argument is inaccurate. Plaintiff alleges not only that the police searched Cheetahs, but also that she personally was subject to search and seizure. Plaintiff therefore sufficiently alleged standing.

Finally, again for the first time in their reply brief, Defendants maintain Plaintiff's facial challenge to the Ordinance under the Fourth Amendment is barred by the statute of limitations. Because the argument was not raised in the opening brief and Plaintiff had no opportunity to respond, it is rejected without prejudice to properly raising it in a subsequent motion. *See Zamani*, 491 F.3d at 997 ("The district court need not consider arguments raised for the first time in a reply brief."). For all of the foregoing reasons, Defendants' motion to dismiss the facial and as-applied challenges to the Fourth Amendment claims is denied.

**C.   Fourteenth Amendment**

Plaintiff's first cause of action is based on the Fourteenth Amendment insofar as the Fourteenth Amendment protects the First and Fourth Amendment rights against violation by state, as opposed to federal, actors. (Opp'n at 16, citing *Duncan v. Louisiana*, 391 U.S. 145, 148 (1968).)

> [A] number of procedural protections contained in the Bill of Rights were made applicable to the States by the Fourteenth Amendment. [¶] This course of decision has substituted ... the specific guarantees of the various provisions of the Bill of Rights embodied in the first 10 Amendments to the Constitution for the more generalized language contained in the earlier cases construing the Fourteenth Amendment."

*Albright v. Oliver*, 510 U.S. 266, 272-73 (1994).

Relying on *Albright v. Oliver*, Defendants argue the Fourteenth Amendment claim should be dismissed because Plaintiff is not asserting an independent claim based solely

on the Fourteenth Amendment.  (*See* Reply at 4.)  *Albright* supports the contrary position however.  It holds that *expansion* of due process rights, especially in the criminal procedure arena, is disfavored when "[a] particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior."  *Albright*, 510 U.S. at 273 (citation and internal quotation marks omitted).  Accordingly, "the particular Amendment," and "not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  *Id*. (citation and internal quotation marks omitted).  *Albright* permits rather than precludes Plaintiff's reliance on the Fourteenth Amendment as a conduit to apply "particular Amendments" to state government action.  Defendants' motion to dismiss the Fourteenth Amendment claim is denied.

### D. *Monell* Liability

Defendants next request dismissal of the constitutional claims alleged against the City and Chief of Police Shelly Zimmerman (the "Police Chief") based on *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Section 1983 does not provide for *respondeat superior* liability.  *Monell*, 436 U.S. at 691.  However, a municipality can be found liable for the actions of its agents where (1) the constitutional violation at issue is the product of a policy, practice, or custom of the municipality; (2) a municipal policy maker ratifies the action; or (3) the action is the product of a failure to train.  *See id.*; *see also Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1534 (9th Cir. 1995); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

#### 1. Municipal Policy, Practice or Custom

In her sixth cause of action, Plaintiff alleges that the City maintained a policy which allowed the police officers to detain, search, and photograph adult entertainers in violation of their Fourth Amendment rights, and that the City was deliberately indifferent to this allegedly widespread practice.  Defendants argue this claim should be dismissed because it is based on a single incident -- the July 2013 inspection of Cheetahs, the only

inspection at which Plaintiff was present. They contend that Plaintiff provided no factual allegations of widespread misconduct.

To establish liability based on a municipal policy, practice or custom, the plaintiff must show that "a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." [6] *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (internal quotation marks and citations omitted). Plaintiff cites to two subsequent inspections on March 6, 2014, and to a later statement by the police department's official spokesman that photographing adult entertainers was "a *routine* part of the inspection" conducted pursuant to the "inspection authority" granted by §33.0103. (FAC at 15 (emphasis added).) The allegations regarding the additional inspections and the spokesman's statement do not assist Plaintiff, because they occurred *after* the July 2013 inspection. Accordingly, they cannot serve to show that in July 2013, the City was deliberately indifferent to the allegedly widespread practice of unconstitutional searches and seizures. Accordingly, Plaintiff has not alleged sufficient facts to support her claim that unconstitutional conduct was widespread in July 2013. Defendants' motion to dismiss the sixth cause of action is therefore granted.

The Court must next consider whether Plaintiff should be granted leave to amend. *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Rule 15 advises leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation marks and citation omitted).

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

---

[6] Plaintiff's opposition is based only on the latter theory.

opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be freely given.

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (internal quotation marks and citation omitted).  Dismissal without leave to amend is not appropriate unless it is clear the complaint cannot be saved by amendment.  *Id.*  Because it may be possible for Plaintiff to allege additional facts in support of her claim, she is granted leave to amend.

### 2. Ratification

In the seventh cause of action, asserted only against the City, Plaintiff alleges that the police officers' conduct was ratified by the Police Chief.  Defendants contend this claim should be dismissed because Chief Zimmerman did not take office until after the July 2013 inspection, and there are no allegations how she knew about the unconstitutional conduct.

That Chief Zimmerman did not take office until after the July 2013 inspection is not fatal to Plaintiff's claim, because she was sued in her official capacity.  A suit against her is a suit against her office, rather than against her personally.  *See Will v. Michigan Dept. of Police*, 491 U.S. 58, 71 (1989); *see also Brandon v. Holt*, 469 U.S. 464, 471 (1985).  Plaintiff's failure to allege how the Police Chief knew about the officers' conduct is also not fatal, as conditions of a person's mind, including knowledge, may be alleged generally.  Fed. R. Civ. Proc. 9(b).

A local government may be held liable under §1983 when an official with final policy-making authority ratified a subordinate's unconstitutional act.  *Gillette*, 979 F.2d at 1346–47.  This requires a showing of "a conscious, affirmative choice" on the part of the authorized policymaker.  *Id*. at 1347.  That the police department's spokesman allegedly stated to the media that photographing entertainers was a routine part of inspections pursuant to S.D.M.C. §33.0103, supports the inference that this practice was ratified by the police department.  Defendants' argument that the spokesman is not the police department's final policymaker is unavailing.  It can reasonably be inferred that the

official department spokesman would not have publicly stated that photographing was a routine part of the inspection, unless this reflected the official police department policy. Defendants' motion to dismiss the seventh cause of action is therefore denied.

### 3. Failure to Train

In the eighth cause of action, asserted against the City and the Police Chief, Plaintiff alleges that as a matter of custom, practice and policy, the City and the Police Chief failed to provide adequate training necessary to protect the citizens' constitutional rights, that they knew inadequate training was likely to result in constitutional violations, and were deliberately indifferent to the police department's unconstitutional actions. Defendants argue Plaintiff failed to allege a sufficient factual basis for deliberate indifference and causation, *i.e.*, that the alleged failure to train led the police officers to violate Plaintiff's constitutional rights.[7]

"[T]he inadequacy of police training may serve as the basis for §1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Harris*, 489 U.S. at 388 (footnote omitted). In this regard, "[t]he issue ... is whether th[e] training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent 'city policy.' [It may represent a policy if] in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id*. at 390. "For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to

---

[7] For the first time in their reply, Defendants contend that Plaintiff cannot state a claim unless she alleges "a pattern of similar incidents." (Reply at 8.) Because Plaintiff did not have an opportunity to respond to this argument, the Court declines to consider it at this time. *See Zamani*, 491 F.3d at 997.

train officers in the constitutional limitations on the use of deadly force can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights." *Id*. n.10 (internal quotation marks and citation omitted).  "In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Id*. at 390 (footnote omitted).  "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *Id*.  "Moreover, for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury." *Id.* at 391.

To state a claim for failure to properly train, a plaintiff must allege at the pleading stage "that (1) [s]he was deprived of a constitutional right, (2) the City had a training policy that amounts to deliberate indifference to the [constitutional] rights of the persons with whom [its police officers] are likely to come into contact and (3) [her] constitutional injury would have been avoided had the City properly trained those officers." *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) (internal quotation marks and citation omitted).

For the reasons stated in the first part of this Order, Plaintiff sufficiently alleged her constitutional rights were violated.  The Ordinance empowers and directs the police department to conduct administrative inspections of adult entertainment establishments.  There is an obvious need to train the officers how to conduct administrative inspections, as distinguished from searches pursuant to other exceptions to the warrant requirement and searches pursuant to a warrant.  Under these circumstances, it can reasonably be inferred that failure to provide adequate training is likely to lead to Fourth Amendment violations.  Inadequate training therefore could amount to deliberate indifference.  The inadequacy of training is apparent from the police spokesman's public statement that photographing the entertainers was a routine part of inspections under §33.0103.  Plaintiff alleged that inadequate training was provided, and that the failure to properly train the

officers caused the violation of her Fourth Amendment rights.  (FAC at 16.)  Plaintiff alleged sufficient facts in support of the eighth cause of action.  Defendants' motion to dismiss is denied in this respect.

### E. Bane Act

The Bane Act prohibits interference by threat, intimidation, or coercion with the exercise of constitutional rights.  A violation is defined in the statute, among other things, as interference "by threat [or] intimidation ... with the exercise or enjoyment by any individual ... of rights secured by the Constitution ... ."  Cal. Civ. Code §52.1(a); *see also id.* §52.1(b) (West's Ann. Cal. Civ. Code §52.1 eff. Jan. 1, 2004 to Dec. 31, 2014).

Plaintiff alleged Defendants interfered with her Fourth Amendment rights "by coercion and intimidation; specifically by threatening to arrest" her and "performing an administrative inspection as though it were a criminal raid."  (FAC at 12.)  Defendants argue the claim should be dismissed because they are immune under California Government Code §821.6 and because Plaintiff does not allege they used or threatened to use violence.

Section 821.6 provides immunity to public employees "for injury caused by ... instituting or prosecuting any judicial or administrative proceeding within the scope of ... employment ... ."  Without any explanation or citation to authority, Defendants imply the routine administrative inspection constituted "instituting or prosecuting a[] judicial or administrative proceeding," or an investigation.  Their immunity argument is therefore rejected.[8]

Furthermore, the lack of allegation of violence is not fatal to Plaintiff's claim.  The basis for her claim is two-fold: (1) verbal threats of arrest; and (2) physically blocking exits and engaging in other intimidating and coercive conduct, such as displaying

---

[8]   Plaintiff did not respond to the immunity argument.  Should Defendants raise this argument again, Plaintiff must brief it in a substantive response.  Failure to address the argument may be construed as conceding its validity.

17

14-cv-01941-L-RBB

weapons, wearing ballistic vests, and conducting the inspection in the manner of a raid. (FAC at 12; *see also id.* at 9.)  Where the alleged threat is accomplished by speech alone, the Bane Act requires "a showing that the speech itself threatens violence." Cal. Civ. Code §52.1(j).  However, by alleging threatening and coercive conduct, Plaintiff alleged more than spoken threats.  This is sufficient to allege interference with her constitutional rights by "intimidation or coercion."  Defendants' motion to dismiss the Bane Act claim is therefore denied.

### F. False Imprisonment

In the fifth cause of action, Plaintiff alleges the officers confined her to her dressing room before and during interrogation and photographing.  She claims she did not consent to the confinement, and that it was imposed without lawful authority.  A false imprisonment claim under California law consists of the following elements:  "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Easton v. Sutter Coast Hosp.*, 80 Cal. App. 4th 485, 496 (2000).

Defendants argue Plaintiff has not alleged any facts to show her confinement was imposed without lawful privilege.  The argument is based on the assertion that the inspection was authorized by the Ordinance.  However, as discussed in the first part of this Order, Plaintiff alleged sufficient facts to show that the scope of the search and seizure exceeded the "reasonable inspection" authorized by the Ordinance.  Defendants' motion to dismiss the fifth cause of action is therefore denied.

### G. Injunctive Relief

In her ninth cause of action, Plaintiff seeks injunctive relief to prevent repeated violations, as alleged in her other claims.  Defendants request dismissal arguing an injunction is a remedy, and not a cause of action.  Injunctive relief may be available as a remedy, if Plaintiff prevails on her other causes of action.  Although Defendants are correct that an injunction is a remedy, the ninth cause of action includes additional allegations in support of injunctive relief.  Dismissing it solely on the grounds that it is

inaptly labeled would be inconsistent with the purpose of the Federal Rules of Civil Procedure, *i.e.*, "to secure a just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. Proc. 1. Defendants' motion to dismiss the ninth cause of action is therefore denied.

## IV.   CONCLUSION AND ORDER

For the foregoing reasons, Defendants' motion is granted in part and denied in part. To the extent the motion is granted, Plaintiff is granted leave to amend. No later than **August 25, 2016**, Plaintiff shall file and serve her second amended complaint, if any. Defendants shall file and serve their response within the time provided in Federal Rule of Civil Procedure 15(a)(3). If Plaintiff chooses not to amend, the time to file a response, if any, shall be determined as if an amended complaint had been served on August 25, 2016.

**IT IS SO ORDERED.**

Dated:  July 28, 2016

_____
Hon. M. James Lorenz
United States District Judge